UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Jewelean Jackson, Ethylon Brown, William
Brown, Brenda Doane, and David Williams,
on behalf of themselves and all others
similarly situated,

       Plaintiffs,

v.                                                          Civil No. 08-305 (JNE/JJG)
                                                            ORDER

Mortgage Electronic Registration Systems, Inc.,
and Richard W. Stanek, in his official capacity
as Sheriff of Hennepin County,

       Defendants.

---

Amber M. Hawkins, Esq., The Legal Aid Society of Minneapolis, William H. Crowder, Esq., Crowder Teske, PLLP, and Galen D. Robinson, Esq., Mid-Minnesota Legal Assistance, appeared for Plaintiffs Jewelean Jackson, Ethylon Brown, William Brown, Brenda Doane, and David Williams.

Robert J. Pratte, Esq., DLA Piper US LLP, appeared for Defendant Mortgage Electronic Registration Systems, Inc.

Robert Rudy, Esq., Assistant County Attorney, Office of the Hennepin County Attorney, appeared for Defendant Richard W. Stanek.

---

       This is a putative class action brought by five individuals—Jewelean Jackson, Ethylon Brown, William Brown, Brenda Doane, and David Williams—against Mortgage Electronic Registration Systems, Inc. (MERS), and Richard W. Stanek, in his official capacity as Sheriff of Hennepin County. Plaintiffs brought the case in state court, and MERS removed it to this Court on the basis of jurisdiction conferred by 28 U.S.C.A. § 1332(d)(2) (West 2006).[1] Plaintiffs claim

---

[1]    Neither Plaintiffs nor the Sheriff invoked the jurisdictional exceptions contained in 28 U.S.C.A. § 1332(d)(4). *See Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 804, 813 (5th Cir. 2007); *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1024 (9th Cir. 2007); *Hart v.*

1

that MERS violates Minnesota law by foreclosing mortgages by advertisement without recording or registering all mortgage assignments and without listing all assignees in notices of sale. *See* Minn. Stat. §§ 508.57, 580.02(3), 580.04(1) (2006). The case is before the Court on Plaintiffs' Motion for Temporary Restraining Order. Plaintiffs seek to restrain MERS from: (1) conducting any foreclosure by advertisement in Hennepin County; and (2) selling, assigning, or transferring any Sheriff's Certificate of Sale obtained as a result of a foreclosure sale pertaining to homeowners who occupied their homes pursuant to their statutory right of redemption as of January 25, 2008, and from taking any action to enforce rights of ownership or occupancy against such homeowners. Plaintiffs also seek to restrain the Sheriff from conducting mortgage foreclosure sales when MERS is the party authorizing or requesting the sale. The Sheriff has not taken any position with respect to Plaintiffs' motion. MERS opposes the motion. For the reasons set forth below, the Court denies the motion.

To determine whether to grant injunctive relief, a court must consider: (1) the likelihood of success on the merits; (2) the threat of irreparable harm absent the restraining order; (3) the balance between this harm and the harm experienced by other parties if the injunction issues; and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). Injunctive relief is an extraordinary remedy, *see Calvin Klein Cosmetics Corp. v. Lenox Laboratories, Inc.*, 815 F.2d 500, 503 (8th Cir. 1987), and the party requesting the injunctive relief bears the "complete burden" of proving all the factors listed above. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987). The Court begins with the most significant factor, the likelihood of success on the merits. *See Minn. Ass'n of Nurse Anesthetists v. Unity Hosp.*, 59 F.3d 80, 83 (8th Cir. 1995).

---

*FedEx Ground Package Sys., Inc.*, 457 F.3d 675, 680-81 (7th Cir. 2006); *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1164-65 (11th Cir. 2006).

*Likelihood of success on the merits*

Under Minnesota law, "any mortgage of real estate containing a power of sale, upon default being made in any condition thereof, may be foreclosed by advertisement." Minn. Stat. § 580.01 (2006). "To entitle any party to make such foreclosure, it is requisite" that a default has occurred to make the power of sale operative; that no action to recover the debt secured by the mortgage is pending; and that "the mortgage has been recorded and, *if it has been assigned, that all assignments thereof have been recorded*; provided, that, if the mortgage is upon registered land, it shall be sufficient if the mortgage and all assignments thereof have been duly registered." *Id.* § 580.02 (emphasis added).[2] Notice of the foreclosure sale must be given, *id.* § 580.03, and the notice must include "the name of the mortgagor, the mortgagee, *each assignee of the mortgage, if any*, and the original or maximum principal amount secured by the mortgage," *id.* § 580.04(1) (emphasis added). Failure to comply with the statute invalidates the foreclosure by advertisement:

> Foreclosure by advertisement is purely a statutory creation. One who avails himself of its provisions must show an exact and literal compliance with its terms; otherwise he is bound to profess without authority of law. If what he does failed to comply with the requirements of the statute, it is void.

*Moore v. Carlson*, 128 N.W. 578, 579 (Minn. 1910).

Plaintiffs and MERS largely agree as to how MERS takes interests in property. MERS is named mortgagee, as nominee for a lender, upon either a mortgage's origination or an assignment by a lender of a previously originated mortgage. The MERS System, a national electronic registry, then tracks changes in beneficial ownership interests and servicing rights in

---

[2]   "Mortgages upon registered land may be foreclosed in the same manner as mortgages upon unregistered land. Where the mortgage is upon registered land it shall be sufficient to authorize the foreclosure thereof by advertisement, if such mortgage and all assignments thereof shall have been registered . . . ." Minn. Stat. § 508.57. For present purposes, the Court assumes that the distinction between recordation and registration of assignments is not material and refers to recordation of assignments in considering Plaintiffs' motion.

3

mortgage loans. MERS remains the mortgagee of record when beneficial ownership interests or servicing rights are sold from one member of the MERS System to another. When rights are transferred from a member of the MERS System to a non-member, MERS records an assignment from MERS to the non-member in the county where the secured property is located. The essence of the parties' dispute is whether MERS is a mortgagee and whether the changes tracked within the MERS System constitute assignments for purposes of Minnesota's foreclosure-by-advertisement statutes.

In this case, the record reveals that Plaintiffs named MERS mortgagee when they purchased houses in Hennepin County, Minnesota. Each plaintiff executed a mortgage that identified the plaintiff as "Borrower," a corporation other than MERS as "Lender," and MERS as "mortgagee": "MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument." Each mortgage contains the following Transfer of Rights in the Property:

> This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the County of Hennepin . . . .
>
> . . . Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

Plaintiffs are in default, and MERS commenced proceedings to foreclose Plaintiffs' mortgages by advertisement. The notices of foreclosure sale identify MERS as mortgagee and do not list any assignees. Mortgage foreclosure sales of some of Plaintiffs' houses have taken place.

4

According to Plaintiffs, MERS is not a mortgagee but acts as a mortgagee solely as nominee for a lender or a lender's assigns. In its capacity as nominee, Plaintiffs' expert asserts, MERS is not the owner of a mortgage for purposes of foreclosure. However, faced with uncertainty as to the whether mortgages, assignments, and discharges that name MERS as mortgagee could be recorded, *cf. MERSCORP, Inc. v. Romaine*, 861 N.E.2d 81, 82-83 (N.Y. 2006), the Minnesota legislature enacted Minn. Stat. § 507.413 in 2004. Plaintiffs aptly term section 507.413 the "MERS statute" and concede the unassailable point that the section authorizes MERS, as a designated nominee, to foreclose.[3]

As a federal court applying Minnesota law, the Court is bound by decisions of the Minnesota Supreme Court. *See Minn. Supply Co. v. Raymond Corp.*, 472 F.3d 524, 534 (8th Cir. 2006); *David v. Tanksley*, 218 F.3d 928, 930 (8th Cir. 2000). The requirements at issue in this case—recordation of assignments and notation of assignees on notices of sale—have remained essentially the same since Minnesota's admission into the Union. *Compare* Pub. Stat. of Minn., ch. 75, §§ 2, 5 (1849-1858), *with* Minn. Stat. §§ 580.02(3), 580.04(1) (2006). Thus, early cases issued by the Minnesota Supreme Court on the issue of recordation of assignments generally remain authoritative. *Cf. Graybow-Daniels Co. v. Pinotti*, 255 N.W.2d 405, 407 (Minn. 1977) ("The [redemption] statute at issue has been extant in an essentially unchanged form since 1878, hence these early cases cannot be distinguished either on the basis of a later amendment or on the basis of a revision of the statute."). The Minnesota Supreme Court has repeatedly held that the holder of legal title to a mortgage can exercise the mortgage's power of sale if that title appears

---

[3] A House Research Act Summary identifies MERS in connection with section 507.413: "The act [section 507.413] also allows county title registrars to rely on mortgage assignments and satisfactions where the Mortgage Electronic Registration System (MERS) is shown as nominee of the lender. MERS exists to track changes in beneficial interests over the life of a mortgage as it is re-sold."

5

of record.  *See Mut. Trust Life Ins. Co. v. Ecklund Bldg Co.*, 231 N.W. 207, 209 (Minn. 1930); *Soufal v. Griffith*, 198 N.W. 807, 808-09 (Minn. 1924); *Hathorn v. Butler*, 75 N.W. 743, 744 (Minn. 1898); *Dunning v. McDonald*, 55 N.W. 864, 865 (Minn. 1893); *Bottineau v. Aetna Life Ins. Co.*, 16 N.W. 849, 850 (Minn. 1883).

As noted above, to secure repayment of their loans and performance of other obligations, Plaintiffs "mortgage[d], grant[ed] and convey[ed] to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the County of Hennepin . . . ."  Each plaintiff understood and agreed that "MERS holds only legal title to the interests granted by [the plaintiff] in this Security Instrument" and that MERS has "the right to foreclose and sell the Property." There is no evidence that MERS assigned its legal interest in the Plaintiffs' mortgages.  Under these circumstances, it does not appear likely to this Court that the Minnesota Supreme Court would interpret Minnesota's foreclosure-by-advertisement statutes to require MERS to record the interests tracked within the MERS System before MERS invokes the state's foreclosure-by-advertisement statutes.[4]  *See In re Sina*, No. A06-200, 2006 WL 2729544, at *2 (Minn. Ct. App. Sept. 26, 2006) (rejecting argument that MERS failed to comply with Minnesota's foreclosure-by-advertisement statutes), *review denied* (Minn. Dec. 12, 2006).[5]

---

[4]     Indeed, MERS asserts that the changes tracked within the MERS System—what Plaintiffs assert that MERS must record before foreclosing a mortgage by advertisement—are not recordable.  Plaintiffs have not directed the Court to any authority that counters MERS's assertion.

[5]     As an unpublished opinion of the Minnesota Court of Appeals, *Sina* is not precedential. *See Vlahos v. R&I Constr. of Bloomington, Inc.*, 676 N.W.2d 672, 676 n.3 (Minn. 2004) ("[W]e pause here to stress that unpublished opinions of the court of appeals are not precedential.  The danger of miscitation is great because unpublished decisions rarely contain a full recitation of the facts.  Unpublished decisions should not be cited by the district courts as binding precedent." (citations omitted)); *State ex rel. Hatch v. Employers Ins. of Wausau*, 644 N.W.2d 820, 828

In short, on the limited record before it, the Court concludes that Plaintiffs' likelihood of success on the merits is slim.  Although Plaintiffs need not demonstrate a likelihood of success greater than fifty percent to obtain preliminary injunctive relief, they must demonstrate that they have a fair chance of prevailing.  *See Phelps-Roper v. Nixon*, 509 F.3d 480, 485 (8th Cir. 2007).  The Court concludes that Plaintiffs have not satisfied their burden.[6]

*Threat of irreparable harm*

Plaintiffs maintain that they face a threat of irreparable harm in the absence of a temporary restraining order.  According to Plaintiffs, those whose houses have not yet been sold at a mortgage foreclosure sale face irreparable harm because a mortgage foreclosure sale extinguishes the mortgage, and those whose houses have already been sold at a mortgage foreclosure sale face irreparable harm from the approaching expiration of their redemption periods.  MERS contends that Plaintiffs have not demonstrated a threat of irreparable harm because Plaintiffs face foreclosure only because they did not pay their loans.  *See Salt Lake Tribune Publ'g Co. v. AT&T Corp.*, 320 F.3d 1081, 1106 (10th Cir. 2003) ("We will not consider a self-inflicted harm to be irreparable . . . ."); *Caplan v. Fellheimer Eichen Braverman & Kaskey*, 68 F.3d 828, 839 (3d Cir. 1995) ("If the harm complained of is self-inflicted, it does not qualify as irreparable.").  The Court rejects MERS's argument.  The harm faced by Plaintiffs arises out of MERS's alleged violations of Minnesota's foreclosure-by-advertisement statutes.  Although those Plaintiffs whose houses have already been sold at a mortgage foreclosure sale may protect their interests pursuant to Minn. Stat. § 580.28 (2006), the limited record before the Court

---

(Minn. Ct. App. 2002) ("We remind courts that our unpublished opinions are '[a]t best' of persuasive value and are not controlling." (alteration in original)).  The Court finds *Sina* persuasive; its conclusion is consistent with the Minnesota Supreme Court's cases from the late 1800s and early 1900s.

[6]     The Court invites the parties to submit letters that address whether the Court should certify a question to the Minnesota Supreme Court.  *See* Minn. Stat. § 480.065 (2006).

reveals that Plaintiffs face a threat of irreparable harm in the absence of injunctive relief. *See O'Hagan v. United States*, 86 F.3d 776, 783 (8th Cir. 1996); *Strangis v. Metro. Bank*, 385 N.W.2d 47, 48 (Minn. Ct. App. 1986); *see also Medin v. Liberty State Bank*, No. C7-90-1549, 1990 WL 152691, at *1 (Minn. Ct. App. Oct. 16, 1990).

*Balance of harms*

Plaintiffs claim that the balance of harms weighs in favor of granting their motion. According to Plaintiffs, the primary loss to MERS, as nominee for lenders and lenders' assigns, will be the loss of income from a delayed foreclosure. The Court concludes that this factor favors Plaintiffs. *See Medin*, 1990 WL 152691, at *1.

*Public interest*

Finally, the Court considers the public interest. According to Plaintiffs, their requested relief serves the public interest by assuring compliance with Minnesota law, disclosing all entities that have or had an interest in real property subject to foreclosure by advertisement, and preventing unlawful foreclosures and evictions. Plaintiffs' argument essentially turns on their assertion that MERS forecloses mortgages by advertisement in violation of Minnesota law. The Court acknowledges the public interest in compliance with the law. However, it seems unlikely that Plaintiffs will establish MERS's foreclosures by advertisement violate Minnesota law.

It seems doubtful that a MERS-like system could have been foreseen in the late 1800s and early 1900s when cases such as *Bottineau*, *Dunning*, *Hathorn*, *Soufal*, and *Ecklund Building* were decided. As noted above, the MERS System is a national electronic registry established to track beneficial ownership interests and servicing rights in mortgage loans. MERS's counsel represented at the hearing that MERS developed in reaction to the savings and loan crisis. In its promotional literature, MERS asserts approximately two-thirds of all newly originated

residential loans in the United States are registered on the MERS System. According to one nonprofit organization, MERS was identified as the mortgagee in almost 40% of the sheriff's sales that took place in the seven-county metropolitan area in December 2006. Despite the changes with respect to mortgage origination and assignment from the late 1800s to the present, Plaintiffs do not cite, and the Court has not found, any recent case that comes to a conclusion different from the one stated above, *i.e.*, that MERS's foreclosures by advertisement likely do not violate the requirements of Minnesota's foreclosure-by-advertisement statutes at issue here.

Minnesota has long prized certainty in real estate law. *See Title Ins. Co. of Minn. v. Agora Leases, Inc.*, 320 N.W.2d 884, 885 (Minn. 1982); *Gille v. Hunt*, 29 N.W. 2, 3 (Minn. 1886). As noted above, the Minnesota legislature, faced with uncertainty with respect to recordation of MERS documents, enacted the so-called "MERS statute," Minn. Stat. § 507.413. Plaintiffs concede the section authorizes MERS, as a designated nominee, to foreclose. MERS has operated in Minnesota for several years, and Plaintiffs do not allege any recent change in the way that MERS conducts foreclosures. The timing of Plaintiffs' motion appears motivated by the number of potential foreclosures, rather than a change in the manner in which the foreclosures are accomplished. Temporary restraint of MERS's foreclosures, which likely do not violate state law, in the manner requested by Plaintiffs would be inconsistent with the value placed on certainty in real estate law in Minnesota. *Cf. Ecklund Bldg.*, 231 N.W. at 208-09 (stating that a mortgage given as security for several notes "continues as security for all of them, whoever the holders may be and whether what may be termed the 'legal title' to the mortgage is in one or another of such holders, in the absence of an agreement to the contrary"); *Arnold v. DMR Fin. Servs., Inc.*, 532 N.W.2d 852, 853 (Mich. 1995) (concluding that an unrecorded security assignment of a mortgage does not prevent the mortgagee from foreclosing by

advertisement under Michigan law). The Court concludes that the public interest does not favor Plaintiffs.

*Conclusion*

Having reviewed the *Dataphase* factors, the Court concludes that a temporary restraining order is not warranted. Although Plaintiffs have demonstrated that they face a threat of irreparable harm and that the balance of harms favors them, the likelihood of Plaintiffs' success on the merits, the most significant factor, is too slight to justify Plaintiffs' requested relief. Moreover, the public interest weighs against Plaintiffs' requested relief. Accordingly, the Court denies Plaintiffs' motion.

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Plaintiffs' Motion for Temporary Restraining Order [Docket No. 2] is DENIED.

2. On or before February 20, 2008, the parties shall file letters of no more than five pages that address whether the Court should certify a question to the Minnesota Supreme Court.

Dated: February 13, 2008

s/ Joan N. Ericksen<br>JOAN N. ERICKSEN<br>United States District Judge